[Civ. No. 7354. First Appellate District, Division Two.—April 3, 1931.]

MARGARET NAYLOR, Appellant, v. D. L. PETERS et al., Respondents.

Soren X. Christensen, T. C. West and Edwin H. Andrews for Appellant.

Edgar C. Levey and Leon Samuels for Respondents.

STURTEVANT, J. — The plaintiff commenced an action against the defendants to recover a judgment for damages for alleged fraud perpetrated on her in an exchange for her equity in property located in Oakland for trust deeds on properties located in Los Angeles. Defendants answered and a trial was had in the trial court before the court sitting with a jury. At the end of the plaintiff's case the court granted a motion for a nonsuit. The plaintiff has appealed and has perfected a record as to D. L. Peters and El Merrie Del Corporation, two of the defendants.

In her complaint the plaintiff alleged that the defendants conspired to defraud her of her property. Continuing she alleged that the conspiracy consisted of an agreement by which the defendants sought to obtain title to the equity of the plaintiff which was of a value of about $51,000, by exchanging therefor second trust deeds on 300 lots owned by the defendant corporation; that in endeavoring to carry out said conspiracy the defendants represented to the plaintiff that they would transfer to the plaintiff second trust deeds securing six promissory notes in the total sum of $90,000; that the notes were of great value and that the defendants could and would convert the said notes into cash at a discount of not to exceed twenty-five per cent; that the transaction was completed and it then transpired that the second trust deeds were of no value.

The Los Angeles real estate consisted of 300 lots and said lots were a part of a larger tract of land which the defendant corporation was in the act of putting on the market. D. L. Peters owned a majority of the stock of the corporation and was its president. The plaintiff owned an equity in an apartment house in Oakland and from time to time had dealt in real estate in Alameda. Her son, Nathan, held her power of attorney. He was a man about thirty years of age, had resided in Oakland, but his employer was about to transfer him to Los Angeles and the plaintiff desired to make the exchange so she could go. The plaintiff's apartment house had an appraised value of $200,000 subject

to encumbrances aggregating $149,000, thus leaving an equity of $51,000. She expressed her desire to exchange her equity for properties in Los Angeles. James P. McDonnell had transacted business in Oakland. He called on the plaintiff and obtained from her information regarding her own property and what she wanted in exchange therefor. Later McDonnell went to Los Angeles and engaged in business. Thereafter from time to time he called on the plaintiff in Oakland and sometimes plaintiff's son called on him in Los Angeles. At one time McDonnell laid before the plaintiff a proposition to exchange the plaintiff's property for some so-called Mortimer trust deeds. At that time it was stated to the plaintiff that there were brokers in Los Angeles who dealt in second trust deeds and that the Mortimer second trust deeds could be converted into cash. However, the Mortimer transaction fell through. In later conversations the plaintiff frequently stated that she wanted to exchange her equity for trust deeds that could be converted into cash. Negotiations commenced as early as January, 1928, and continued through that month and into February of that year. After McDonnell went to Los Angeles Alvin T. Dickens commenced to act as an associate with him. At times they transacted some business through the office of the defendant Robert Annis who held a license as a real estate broker and maintained an office in Oakland. After the Mortimer transaction fell through the defendants McDonnell and Dickens called on the defendant D. L. Peters and they had a conversation regarding an exchange on behalf of the plaintiff. That conversation resulted in a tentative agreement by which the plaintiff was to convey her equity for the second trust deeds on some of the lots owned by the defendant corporation. Thereupon February 1, 1929, the defendant McDonnell prepared and thereafter the plaintiff's son and he executed an agreement to exchange the plaintiff's equity for the second trust deeds on 300 lots of the properties owned by the defendant corporation. About the same time the defendant Dickens presented to Mr. Peters, and he executed an exchange agreement by which the defendant corporation agreed to deliver in exchange for plaintiff's property above-mentioned second trust deeds. The plaintiff calls to our attention as evidence of fraud the fact that the agents tied up the defendants by a written contract before they

tied up the plaintiff. That fact was no evidence of fraud. It was solely an affair of the agents. In both of these transactions the defendant Peters personally acted for the defendant corporation and did not at any time act or purport to act through any other agent. On the other hand the plaintiff's son Nathan Naylor held her power of attorney and acted as business adviser to his mother. The defendant McDonnell acted as the agent of the plaintiff and the defendants Dickens, Annis and Mr. and Mrs. Janssen were assistants or subagents of McDonnell.

The only thing purporting to be fraud which came within the evidence contained in a transcript of nearly 700 pages is a showing that both McDonnell and Dickens represented to the plaintiff that the said second trust deeds were marketable at a sum not less than twenty-five per cent of their face value and that the latter defendants could and would sell them at such prices for the plaintiff. Conceding, without deciding, such facts to be actionable fraud, those matters are not before us because the order of nonsuit did not include those two defendants.

As to each and every other defendant there was not a particle of evidence connecting any one of them with any of the alleged wrongs so committed by McDonnell and Dickens, nor that such acts were advised by, known to, or brought about by any one or all of the other defendants, nor was there any showing that any one of the other defendants committed any other act or used any language which purported to constitute anything in the nature of fraud. Those passages in the transcript which the plaintiff contends to be opposed to the views just expressed we will briefly touch upon. That the defendant Peters practically owned all of the stock of the Peters-Rhodes Company and El Merrie Del Corporation is quite immaterial. The statement that Peters got some of plaintiff's money is not helpful because by the terms of the contract the taxes, insurance, and some other charges were to be prorated. The fact that said sums were paid to Peters is immaterial. The statements of some of the witnesses that Peters was the buyer were but statements of the actual contents of the contracts. The defendant Janssen had been an attaché in the office of the defendant Annis at Berkeley. The fact that before the contract was actually consummated McDonnell caused the plain-

tiff to deed the Oakland property to Janssen and wife, thus holding the property impounded until the contract was executed, in no way strengthens the plaintiff's claim. After the transaction was all over the fact that Janssen became an employee of the defendant Peters is quite immaterial. The same remark may be made of the circumstance that the Janssens, Noble, Annis and others acted as dummies. It is said that the defendant corporation executed its trust deeds to Noble, who was an impecunious individual. His solvency or insolvency is immaterial, the trust deeds were based on real estate—not the financial standing of Noble. Many pieces of evidence came into the record as of a date after the transaction had been wholly completed; but no one of those items is helpful. On February 4th the Janssens conveyed the Oakland property pursuant to the terms of the contract. Defendant took possession February 16, 1929. The second trust deeds were not delivered by the escrow company at the same time. Furthermore certain quarrels took place regarding the payment of expenses. Those matters might be pertinent if this were an action for breach of contract but otherwise they are immaterial. Just before the exchange had been completed more cash was needed. To prevent the sale from falling through Peters advanced to McDonnell and Dickens $1800. Such an act was purely a business matter and no evidence of fraud.

The plaintiff may have suffered a loss. The cause of that loss is clearly the bad business method of taking over the second trust deeds without due inquiry as to the facts. At an early date in the transactions both the plaintiff and her son visited the properties owned by the defendant corporation. In many places in the record the statement is made by each of those persons that they were not buying real estate but they were buying marketable second trust deeds. However, the marketability of the second trust deeds rested on three things—the ability of the debtor to pay the interest as it fell due, the relative value of the lands included in the deeds, and the amount of the first trust deeds. The plaintiff knew that the properties of the defendant corporation were absolutely unproductive and she knew, or should have known, the amount secured by the first trust deeds, and that the only possibility of the debtor getting any moneys out of said properties was by making sales of at least por-

tions thereof. Nevertheless the record does not disclose any inquiry made on any of those subjects.

Merely inserting the words "conspiracy", "conspirator", "cheat", "fraud", and other harsh terms does not convert a negligent business deal into a transaction of fraud. After the transaction had been wholly completed and when the plaintiff's son demanded a return of the plaintiff's properties and a cancellation of the entire transaction it was not strange that the other party should refuse to comply with the demand. Theretofore, when nothing had been signed and no demand for retraction had arisen, the defendant McDonnell asked the plaintiff's son if he wanted to consult an attorney and whether he was willing to proceed with the transaction and if not to say so. Nathan Naylor thereupon said that he wanted to proceed. The plaintiff may not now complain.

We find no error in the record. The order appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.